1

2

3

4

5

6

7

8                    IN THE UNITED STATES DISTRICT COURT

9                    FOR THE EASTERN DISTRICT OF CALIFORNIA

10   DAVID THORNE,

11             Plaintiff,                    No. CIV S-06-0763 RRB EFB P

12        vs.

13   JEANNE WOODFORD, et al.,

14             Defendants.          <u>FINDINGS AND RECOMMENDATIONS</u>

15   _____/

16        Plaintiff is a state prisoner proceeding *pro se* and *in forma pauperis* with a civil rights

17   action pursuant to 42 U.S.C. § 1983.  This matter is before the court on cross-motions for

18   summary judgment.  Plaintiff alleges in his complaint that his custody status was changed in

19   violation of his constitutional right to equal protection under the law.  Defendants argue that

20   plaintiff is appropriately housed and he has failed to state an Equal Protection claim.

21   **I.    Facts**

22        At all times relevant to the complaint, plaintiff was a state inmate lawfully confined at

23   California State Prison, Solano in Vacaville, California.  Defs.' Stmt. of Undisp. Facts ("DUF")

24   1[1].  Defendants Jeanne Woodford and Tom L. Carey were employed as Director of the California

25

26        [1] Plaintiff has not filed a response to the defendants statement of material facts as
     required by Local Rule 56-260(b).

Department of Corrections and Rehabilitation and Warden of the California State Prison at Solano, respectively, at all times relevant to the complaint.

Plaintiff has been in CDCR custody since being sentenced to multiple life terms in 1998. DUF 2.  He is serving three consecutive sentences of 15 years to life for three second-degree murder convictions, as well as a consecutive sentence of three years for causing bodily injury while driving under the influence of alcohol or drugs.  DUF 3.  Calculating the maximum possible credit accrual, plaintiff's Minimum Eligible Parole Date (MEPD) is December 20, 2020. DUF 4.

In March 2000, CDCR enacted Close Custody emergency regulations in Title 15 of the California Code of Regulations.  Defs.' Mot. for Summ. J., Attach. 1, Decl. of R. Cole ("Cole Decl."), at ¶ 2.  Section 3000 added numerous definitions; section 3377.1 was amended to identify degrees of custody and to standardize housing and supervision requirements; and section 3377.2 was added to establish the case factors for the Classification Committee to consider in assessing Close Custody.  *Id.*  For inmates with multiple life terms, § 3377.2(c)(3)(B) provides that no reduction in custody level below Close B shall be assigned until the inmate is within seven years of his or her MEPD.  *Id.* at ¶ 6.[2]

Plaintiff states that prior to the enactment of Cal. Code Regs. tit. 15, § 3377.2(c)(3)(B), he was classified as a "medium custody" inmate.  He asserts that after this section was enacted, his custody status was increased to "Close B" custody.  *Id.*  Defendants deny this, stating that prior to the enactment of § 3377.2(c)(3)(B) in May 2001, plaintiff had already been in Close B Custody for more than three years.  Defs.' Resp. to Pl.'s Stmt. of Material Facts, #5.

Plaintiff's CDC 262 Form detailing his custody classification and attached as Exhibit D in support of defendants' motion for summary judgment, reflects that plaintiff was in Close A Custody from April 6, 1990 until May 11, 1993.  Defs.' Mot. for Summ. J., Attach. 2, Decl. of

---

[2]  Close B custody is more restrictive than Medium B custody.  Compare Cal. Code Regs. tit. 15, §3377.1(4) (Close B) and §3377.1(7) (Medium B).

M. Sweigert (Sweigert Decl."), at ¶ 3.  That document shows that he was in Medium A Custody from May 11, 1993, until March 26, 1998.  *Id.*  Finally, he was placed in Close B Custody on March 28, 1998, where he currently remains.  *Id.*

On March 17, 2005, plaintiff appeared before the Classification Committee for Annual Review.  Plaintiff's Verified Complaint ("Compl."), at 14.  Plaintiff requested a custody reduction from Close B to Medium A, and that request was denied.  *Id.*  The Committee ruled that plaintiff "does not meet the criteria for a custody reduction per CCR 3377.2(3)(c), which states he must be within seven years of his MEPD before he is eligible for further reduction of custody."  *Id.*

On April 14, 2005, plaintiff filed a grievance regarding the enactment of § 3377.2(c)(3)(B) and the requirement that he remain in Close Custody status until seven years prior to his MEPD, which was December 20, 2020.  Compl., at 3, 9 . That grievance stated that:

> On March 17, 2005, I requested at my annual classification hearing to have my custody reduced from Close B to Medium A.  I have been within the Department of Corrections over 15 years at this point and was actually classified Medium A from 1993 to 1998 when the CCR, Title 15 was changed to it's [sic] current criteria.  I have never demonstrated any management concerns nor do I have any escape history.  In fact I have never received a CDC 115[3] and have always demonstrated positive programming.  I was denied my request per CCR Title 15, 3377.2(c)(3)(B).  I am not within 7 years to my MEPD of December 2020.  I feel that if I <u>will</u> be eligible for parole, present no management concerns, have no escape history, have no CDC 115's, and have shown only positive programming, I should be eligible for custody reduction to Medium A after 15 years within the Department of Correction.  This is what is required of an inmate serving Life Without the Possibility of Parole.  (See CCR, Title 15, 3377.2(c)(1)).  To require more close custody of me in an equal protection violation.

Compl, at 9, 18 (emphasis in original).

Plaintiff's grievance was denied at all levels.  Compl. at 7-8, 10-13.  The Chief of the Inmate Appeals Branch ("IAB") denied plaintiff's appeal at the Director's Level.  In her decision, she stated that:

---

[3] CDC 115 refers to the California Department of Corrections (CDC) form 115, Rules Violation Report.

the appellant must be reminded that inmates sentenced to a lengthy term have an established release date and must serve a minimum of 15 years at Close custody prior to being eligible for a custody reduction to Medium 'A.'  The IAB notes the appellant is serving multiple 15 year to Life terms with an MEPD of December 20, 2020.  Under CCR 3377.2(c)(3)(C) the appellant is eligible for custody reduction consideration 7 years prior to his MEPD.

Compl., at 7.

## II.     Standards

Summary judgment is appropriate when it is demonstrated that there exists "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

> Under summary judgment practice, the moving party always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)).  "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.'" *Id.*  Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *See id.* at 322.  "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.*  In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is satisfied." *Id.* at 323.

If the moving party meets its initial responsibility, the burden then shifts to the opposing

4

party to establish that a genuine issue as to any material fact actually does exist.  *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists.  *See* Fed. R. Civ. P. 56(e); *Matsushita*, 475 U.S. at 586 n.11.  The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is

genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, *see Wool v. Tandem Computers, Inc.*, 818 F.2d 1433, 1436 (9th Cir. 1987).

   In resolving a summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any.  Fed. R. Civ. P. 56(c).  The evidence of the opposing party is to be believed.  *See Anderson*, 477 U.S. at 255.  All reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party.  *See Matsushita*, 475 U.S. at 587.  Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn.  *See Richards v. Nielsen Freight Lines*, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), *aff'd*, 810 F.2d 898, 902 (9th Cir. 1987).  Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . .  Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'"  *Matsushita*, 475 U.S. at 587 (citation omitted).

   On April 12, 2005, the court advised plaintiff of the requirements for opposing a motion pursuant to Rule 56 of the Federal Rules of Civil Procedure.  *See Rand v. Rowland*, 154 F.3d

952, 957 (9th Cir. 1998) (en banc), *cert. denied*, 527 U.S. 1035 (1999), and *Klingele v. Eikenberry*, 849 F.2d 409 (9th Cir. 1988).

**III.   Analysis**

The essence of plaintiff's complaint is that Cal. Code Regs. tit. 15, § 3377.2(c), as applied here, denies plaintiff equal protection under the law, creates invidious discrimination, and is punitive in nature without any legitimate safety or security risk or other compelling State interest. Compl., at 6 (citing *Riddle v. Mondragon,* 83 F.3d 1197, 1207 (10th Cir. 1006); *McDonald v. Board of Election Comm. of Chicago*, 394 U.S. 802, 807 (1969); *Tuner v. Safley*, 482 U.S. 78, 95-97 (1987); *Lee v. Washington*, 390 U.S. 333, 333-334).

Plaintiff states that under § 3377.2(c)(3)(A), inmates serving life without parole ("LWOP") terms and determinate sentences of 50 years or more are required to serve no more than 15 years in the custody status level known as Close Custody status. Pl.'s Mot. for Summ. J., at 4. He claims that he will have served longer than 15 years at Close Custody status, and that his sentence is not as long as 50 years or LWOP. Thus, he argues, the application of this code section to him discriminates between plaintiff and like-situated persons in the absence of a legitimate penological goal and therefore violates the Equal Protection Clause of the Fourteenth Amendment. *Id.*

Defendants assert that plaintiff is appropriately housed; he is not similarly situated to inmates with different case factors; the CCR regulations are applied uniformly and bear a rational relationship to legitimate penological interests; therefore, plaintiff fails to show a violation of equal protection under the law.

**A.  Legal Standard for Equal Protection Claim**

"The Equal Protection Clause of the Fourteenth Amendment commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike." *City of*

*Cleburne v. Cleburne Living Center*, 473 U.S. 432, 439 (1985) (quoting *Plyer v. Doe*, 457 U.S. 202, 216 (1982)).  In equal protection claims involving prisoners, prison administration regulations are deemed valid if they are reasonably related to legitimate penological interests. *Turner v. Safley*, 482 U.S. 78, 89 (1987).  In evaluating whether administrative regulations are reasonably related to penological interests, the court looks to whether there is a valid, rational connection between the prison regulation and the legitimate government interest put forward to justify it.  *Id*.  Accordingly, plaintiff in the instant case must establish that (1) he is similarly situated to inmates who are being treated differently under the challenged regulation and that (2) defendants have no rational basis for the dissimilar treatment.

**B.  Defendants' Motion for Summary Judgment**

Defendants' motion argues that plaintiff is properly retained in Close B custody and has failed to show an Equal Protection violation.

**1.  Plaintiff's Classification Under Cal. Code Regs. tit. 15, § 3377.2(c)(3)(B)**

Defendants begin with the fundamental premise that CDCR has the authority to determine the proper custody classifications for all inmates committed to its institutions.  CDCR uses custody classifications to establish where an inmate is to be housed and assigned, and the level of staff supervision required to ensure institutional security and public safety.  These classifications are governed by Article 10 of Title 15 of the California Code of Regulation §§ 3375, *et seq*.  Section 3375 (a) requires that:

> The classification process shall be uniformly applied, commencing upon reception of a person committed to the custody of the director and shall continue throughout the time the individual remains under the director's jurisdiction.  Each inmate shall be individually classified in accordance with this article.

All California inmates are subject to one of seven different custody designations, listed in order from most restrictive to least restrictive: Maximum, Close A, Close B, Medium A, Medium B, Minimum A, and Minimum B.  Cal. Code Regs. tit. 15, § 3377.1 (a).  Classification Committees at each institution determine an inmate's initial placement and conduct annual

1  reviews to determine any subsequent reductions in custody level based on an inmate's individual

2  case factors.  *Id.* at §§ 3375, 3376.

3  ////

4

5      Plaintiff's classification is governed by Cal. Code Regs. tit. 15, § 3377.2(c)(3)(B).  Under

6  that section, any inmate who is serving multiple life sentences must be within seven years of his

7  or her MEPD before he or she is eligible for a reduction of custody below Close B status.  *Id.*

8  Following a jury trial, plaintiff was found guilty of three counts of second-degree murder.  He

9  was sentenced to three separate, consecutive terms of fifteen years to life in prison, plus three

10  years for a fourth conviction, which he must serve consecutive to his other sentences.  DUF 3.

11  Plaintiff must serve 48 years in prison, minus any custody credits he may earn.  Given that he

12  was sentenced in 1990, and projecting maximum credit accrual, his Minimum Eligible Parole

13  Date ("MEPD") is currently 2020.  DUF 4.  Therefore, the earliest plaintiff may be eligible for a

14  reduction in custody below Close B is 2013.  Compl., at 7, 11.

15           **2.  Plaintiff's Equal Protection Claim**

16      As to the first prong of his equal protection claim, plaintiff alleges that because similarly

17  situated inmates may spend fewer years in Close Custody than him, he is denied equal

18  protection.  Compl., at 5.  Defendants assert that plaintiff is not similarly situated with the

19  inmates to whom he refers, and therefore can not establish an Equal Protection violation.  The

20  point is well-taken and is dispositive here.

21      Plaintiff does not compare himself to other inmates serving multiple life sentences,

22  inmates who would actually be similarly situated to him.[4]  Rather, he likens himself to inmates

23  who are sentenced to determinate terms of 50-plus years and those sentenced to LWOP.  Compl.,

24

25      [4] His complaint focuses not on his sentence, which places him squarely within the
purview of § 3377.2(c)(3)(B), but on classification factors, such as "lengthy sentence plus
management concern or escape history."  By focusing on the latter he utilizes the straw man
26  device of then arguing that these other classification factors do not apply to him.

8

1   at 5.  He states that those inmates must only serve 15 years total in Close Custody status and he

2   is having to serve more.  Conspicuously, he does not assert that other individuals sentenced to

3   multiple life terms for multiple murders have been assigned Close Custody terms any differently

4   than he has.  Indeed, he concedes in his deposition testimony that he is not aware of other

5   multiple life-term inmates who have not been placed in Close B Custody until 7 years prior to

6   their MEPDs following the enactment of the regulation at issue.  Defs.' Mot. for Summ. J., Ex.

7   A, at 5, 11.1-5.

8         Plaintiff "has not shown that other inmates with his same case factors have had their

9   custody level reduced . . . Consequently, [p]laintiff has not shown that he is similarly situated to

10  other . . . inmates who may have had their custody level reduced."  *Lewis v. Alameida*, 2004 WL

11  859332 (N.D. Cal.) (holding that Cal. Code Regs. tit. 15, § 3377.2(c)(3)(C) does not violate

12  equal protection because it is evenly applied and serves a legitimate penological interest. )

13  Plaintiff therefore fails to satisfy the first prong of the equal protection analysis, that he is

14  similarly situated to inmates who are being treated differently under the challenged regulation.

15        Plaintiff also fails the second prong of equal protection analysis, whether the challenged

16  regulation serves legitimate penological interests.  Prison administration regulations are deemed

17  valid if they are reasonably related to legitimate penological interests.  *Turner v. Safley*, 482 U.S.

18  78, 89 (1987).  Prison regulations are reasonably related to penological interests if there is a

19  valid, rational connection between the regulation and the legitimate government interest put

20  forward to justify it.  *Id*.  Here, the prison administration's interest in providing housing to

21  inmates in the least restrictive setting, commensurate with the inmate's need for supervision

22  represents a legitimate penological interest in allowing for individualized recommendations for

23  custody reductions under § 3377(a)(16).  Furthermore, § 3377.2 of Title 15 of the California

24  Code of Regulations bears a rational relationship to that permissible objective.  *See McQueary v.*

25  *Blodgett*, 924 F.2d 829, 835, n. 7 (9th Cir. 1991).  This court is also mindful that substantial

26  deference is accorded to the professional judgment of prison administrators, who bear a

significant responsibility for defining the legitimate goals of a corrections system and for determining the most appropriate means to accomplish them. *Overton v. Bazzetta*, 539 U.S. 126, 132 (2003) (citing *Pell v. Procunier* 417 U.S. 817, 826-827 (1974)). The burden, moreover, is not on a state to prove the validity of prison regulations but on the prisoner to disprove it. *Overton*, 539 U.S. at 132 (citing *Jones v. North Carolina Prisoners' Labor Union, Inc*., 433 U.S. 119, 128 (1977); and *Shaw v. Murphy*, 532 U.S. 223, 232 (2001)). Plaintiff has not met his burden here and fails to satisfy the second prong of the equal protection analysis.

Accordingly, IT IS HEREBY RECOMMENDED that

1. Defendants' January 4, 2007, motion for summary judgment be granted;

2. Plaintiff's December 6, 2006, motion for summary judgment be denied; and

3. Judgment be entered in defendants' favor and the Clerk be directed to close the case.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Failure to file objections within the specified time may waive the right to appeal the District Court's order. *Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

Dated: February 12, 2008.

EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE